IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO TITLE LAND TRUST CO., as Trustee under Trust Agreement 112352 dated June 1, 1987; and CHICAGO TITLE LAND TRUST CO., as Trustee under Trust Agreement 10-37743-09 dated November 18, 1980,<br><br>    Plaintiffs,<br><br>    vs.<br><br>FIFTH THIRD BANK,<br><br>    Defendant. | Case No. 11 C 1914 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Chicago Title Land Trust Co. has sued Fifth Third Bank, asserting a state law breach of contract claim. The Court has jurisdiction based on diversity of citizenship. Fifth Third has moved for partial summary judgment. For the reasons stated below, the Court denies the motion.

### Background

In 1983, Frank's Nursery and Crafts, Inc. entered into a commercial lease with Dempster Plaza State Bank. Under the terms of the lease, Frank's leased land on which it agreed to "build a typical first-class sprinklered and air conditioned Frank's Nursery and Crafts building" of a certain size. Def. Ex. 2 at 15. Dempster Plaza agreed to pay Frank's $425,000 as reimbursement for construction costs. The initial term of the lease was twenty-five years, but Frank's had a number of five-year extension options so

that the total term of the lease could have been as long as seventy years.

The lease provided that improvements on the leased land, including the building that Frank's built, would become the property of Dempster Plaza. The lease also contained a paragraph addressing repairs, which stated:

> 30. <u>REPAIRS AND ALTERATIONS</u> - Landlord shall not be required to make any improvements or repairs of any kind to the Demised Premises and appurtenances, and the Demised Premises and appurtenances shall at all times be kept in good order, condition, replacement and repair by Tenant and shall also be kept in a clean, sanitary and safe condition in accordance with the laws of the State of Illinois and in accordance with the directions, rules, and regulations of the health officer, fire marshal, building inspector or other proper officers of governmental agencies having jurisdiction, at the sole cost and expense of Tenant, and Tenant shall comply with all requirements of law, ordinance and otherwise touching the Demised Premises. Tenant shall permit no waste, damage, or injury to the Demised Premises, and Tenant shall, at its own cost and expense, replace any glass windows and doors in the Demised Premises which may be broken. At the expiration of the tenancy created hereunder, Tenant shall surrender the Demised Premises in good condition, reasonable wear and tear, loss by fire or other unavoidable casualty excepted.

Def. Ex. 2 at 32–33.

Chicago Title succeeded to the land that had previously been owned by Dempster Plaza and became the landlord under the lease. Frank's filed for bankruptcy, and Fifth Third assumed Frank's lease by order of the bankruptcy court in 2004. Fifth Third intended to make part of the building a bank and sublease the rest, but it never used the building. Before the lease ended on December 31, 2009, Chicago Title sent Fifth Third two letters in which it claimed that Fifth Third was not properly maintaining the building and was breaching the lease. The second letter was accompanied by an inspection report from an engineering firm detailing the repairs that needed to be made on the building and estimating that they would cost $466,175.

Fifth Third denied that it was responsible for any of the maintenance, but it did eventually perform some repairs as part of an effort to avoid litigation. Chicago Title nevertheless sued in state court, stating that it had been forced to make repairs totaling $361,042. Chicago Title claimed that it had repaired the roof, including replacing the drainage system and flashings, replaced the asphalt parking lot, and replaced the heating, ventilation, and air condition (HVAC) units. Fifth Third removed the case to federal court.

## Discussion

On a motion for summary judgment, the Court "view[s] the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The interpretation of an unambiguous contract is a question of law, and therefore a dispute over the terms of an unambiguous contract is suited to disposition on summary judgment." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687 (7th Cir. 2004).

Fifth Third argues that it is not responsible for some of the damages claimed by Chicago Title because the lease did not require that Fifth Third make certain repairs and replacements. In particular, Fifth Third contends that it had no duty to repair or replace structural items like the roof of the building and that it had no duty to replace HVAC units that were merely old and not damaged.

**1.     Roof repair**

Fifth Third concedes that the lease contains "a general covenant of the tenant to repair." Def. Br. at 4. It contends, however, that it is not responsible for repairing or replacing the roof because roof repairs are structural and even a lease that requires a tenant to make repairs does not require the tenant "to make repairs involving structural changes." *Sandelman v. Buckeye Realty, Inc.*, 216 Ill. App. 3d 226, 230, 576 N.E.2d 1038, 1040 (1991). Rather, a tenant is required to make structural repairs only if that duty is "plainly discoverable" in the lease. *Id.*; *see Expert Corp. v. LaSalle Nat'l Bank*, 145 Ill. App. 3d 665, 668, 496 N.E.2d 3, 5 (1986) (finding that tenant had no duty to fix an unsafe load-bearing wall when the lease did not contain the word "structure"). Fifth Third argues that it cannot be responsible for repairing the roof because the repair provision in its lease did not specifically mention roof work or structural repairs. *See Kallman v. Radioshack Corp.*, 315 F.3d 731, 738 (7th Cir. 2002) (tenant had duty to repair and replace roof and HVAC units when lease stated "Lessee shall be liable for repair to the roof and for any structural failure of the building" (emphasis omitted)); *Quincy Mall, Inc. v. Kerasotes Showplace Theatres, LLC*, 388 Ill. App. 3d 820, 825, 903 N.E.2d 887, 891 (2009) (tenant had no plainly discoverable duty to replace roof even though lease explicitly stated that tenant had duty to repair roof).

The classification of a repair or replacement as structural, however, "depends not so much on the physical characteristics of the deficiency as on its foreseeability, from which the intentions and agreement of the parties may be inferred." *Koenigshofer v. Shumate*, 68 Ill. App. 2d 474, 478, 216 N.E.2d 195, 196 (1966). "[E]ven under a . . . limited general covenant to repair, a lessee could be responsible for substantial yet

4

foreseeable repairs." *Rexam Bev. Can Co. v. Bolger*, 620 F.3d 718, 726 (7th Cir. 2010); *see Expert Corp.*, 145 Ill. App. 3d at 668, 496 N.E.2d at 5. Thus a repair is structural and does not fall into a "general covenant of the tenant to repair" when the "alterations or additions to the premises are of a structural or substantial nature and are made necessary by extraordinary or unforeseen future events not within the contemplation of the parties at the time the lease was executed." *Kaufman v. Shoe Corp. of America*, 24 Ill. App. 2d 431, 435–36, 164 N.E.2d 617, 620 (1960).

Fifth Third's lease had an initial term of twenty-five years and with optional extensions could be as long as seventy years. In a lease for seventy years, roof repair and replacement is foreseeable. *Rexam*, 620 F.3d at 726 (roof repair and replacement foreseeable when lease "had the potential to last nearly fifty years"); *see Sandelman*, 216 Ill. App. 3d at 229, 231, 576 N.E.2d at 1040–41 (stating that "replacement of the roof in a commercial lease that could potentially extend over a 70-year term was unquestionably a foreseeable occurrence" but implying that roof replacement was not foreseeable in that particular case). The need to repair and replace the roof was foreseeable, and thus the leases's imposition of a general duty to repair covers roof repairs. *Expert Corp.*, 145 Ill. App. 3d at 668, 496 N.E.2d at 5.

Construing the repair provision in light of the entire lease, *Rexam*, 620 F.3d at 724, there are other reasons to infer that the original parties to the lease intended for the lessee to have the duty to repair the roof. Under the lease, the lessee had the duty to construct the building in the first instance, though it immediately became the property of the lessor. Def. Ex. 2 at 14–15, 18. The lessor paid the lessee for constructing the building. *Id.* at 19–21. The lease also stipulated that any work the lessee did on the

5

property be done well. It required:

> that any repairs, alterations, other improvements or installations made by Tenant to or upon the Demised Premises, including the original construction work, shall be done in a good and workmanlike manner . . . , that materials of good quality shall be employed therein, that the structure of the Demised Premises will not be endangered or impaired thereby, and that the Demised Premises will not be diminished in value thereby.

*Id.* at 33. Finally, the lease required that "[i]f the building upon the Demised Premises, or any part thereof, shall be damaged or destroyed by fire, the elements or other casualty, . . . Tenant shall promptly thereafter repair and restore, or any part thereof, to substantially the same condition," unless the destruction was of a substantial part of the building and within the last two years of the lease or option period. *Id.* at 36–38. All of these lease provisions suggest that the lessee was more responsible for constructing and maintaining the building than an average commercial lessee might be and contribute to the inference that it was the lessee's duty to repair or replace the roof.

For these reasons, the Court concludes that the lessee's general covenant to repair included an obligation to repair and replace the building's roof.

**2.     HVAC units**

The lease states that "[a]t the expiration of the tenancy created hereunder, Tenant shall surrender the Demised Premises in good condition, reasonable wear and tear, loss by fire or other unavoidable casualty excepted." *Id.* at 33. Fifth Third contends that it was not responsible for replacing the HVAC units because they merely exceeded their useful life. This, Fifth Third contends, amounts only to reasonable wear and tear.

Chicago Title argues that Fifth Third was responsible to replace the HVAC units.

It argues that because the terms of the lease required the lessee to construct an air-conditioned building that would become the property of the lessor, it would be illogical to read the lease as not imposing a duty on the lessee to replace HVAC units that wore out before the end of the lease.

There were similar circumstances in *Barnhart v. Boyce*, 102 Ill. App. 172 (1902). In that case, the lessee was obligated to install a passenger elevator meeting certain specifications in the rented building. *Id.* at 178–79. The lessee initially installed a passenger elevator, but when it wore out he installed a cheaper freight elevator in its place. *Id.* at 178. The court determined that the lessee had a duty to install a passenger elevator and the fact that the elevator wore out before the end of the lease did not excuse that duty. *Id.* at 179–80. This was the case even though the lease included, as does the lease in the current case, a provision absolving the lessee of liability for "ordinary wear" when the building was returned to the lessor's possession. *Id.* at 173. Using similar reasoning in this case, the lessee's duty to construct an air-conditioned building did not allow it to deliver a building with obsolete HVAC units to the lessor at the end of the lease even though there is a wear and tear exception to the lessee's liability.

Additionally, the Seventh Circuit has held that an "ordinary wear and tear except[ion]" did not mean that a lessee had an obligation only "to maintain the continuing operational state of the warehouse but not to replace substantial portions of the premises that wear out notwithstanding ordinary maintenance." *Rexam*, 620 F.3d at 725 (internal quotation marks omitted). The court concluded in *Rexam* that the lessee, which had occupied the property for more than forty years, had a duty to replace a roof

that could not be repaired. *Id.* at 722, 727.

Fifth Third argues that the case of *Junction Mining Co. v. Springfield Junction Coal Co.*, 122 Ill. App. 574 (1905), establishes a rule that a tenant is not "bound to replace any portion [of the premises] worn out by time." *Id.* at 596. The court in that case, however, was stating the common law rule that controlled if there was no contract. *Id.* The lease in *Junction Mining* required that the buildings surrounding the coal mine that it had leased "be returned in as good condition as [at the beginning of the lease], ordinary wear and tear, use excepted." *Id.* at 578. The lease did not include a "covenant by the lessee . . . to repair or rebuild" the buildings, and thus the court decided that the common law rule applied. *Id.* at 596–97. Fifth Third's lease, by contrast, required that it build and deliver a new building and subsequently keep it "in good order, condition, replacement and repair." Def. Ex. 2 at 32. Further, the dispute in *Junction Mining* concerned whether the lessee had a duty to repair five derelict tenement houses and an abandoned "hotel in name only" that had been destroyed by fire and that were, before the fire, "the abode of rodents and tramps and wholly worthless for any purpose." *Id.* at 596. Fifth Third's lease contained express provisions dealing with fire, and the duties imposed by the lease to repair and maintain a "first-class sprinklered and air conditioned Frank's Nursery and Crafts Building" are not the same as those the common law imposes in the circumstances in *Junction Mining*. Def. Ex. 2 at 15.

In sum, Fifth Third's lease imposed a duty on the lessee to construct and maintain an air-conditioned building that became the property of the lessor. This required Fifth Third to replace the worn out HVAC units even if this was the result of

normal wear and tear.

## Conclusion

For the reasons stated above, the court denies defendant's motion for partial summary judgment [docket no. 16].  The case is set for a status hearing on December 6, 2011 at 9:30 a.m. (a date on which the parties have already noticed a motion for hearing) for the purpose of setting a schedule for the remainder of the case and discussing the possibility of settlement.

                                                                     MATTHEW F. KENNELLY
                                                                     United States District Judge

Date:  December 5, 2011